[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14600
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-20878-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKY NELSON BYNUM,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 19, 2019)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Ricky Nelson Bynum appeals his convictions for possession with intent to

distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1),

and knowingly possessing a firearm in furtherance of a drug-trafficking crime, in

violation of 18 U.S.C. § 924(c)(1)(A).  On appeal, he argues that the district court's plea colloquy was constitutionally defective and violated Fed. R. Crim. P. 11 ("Rule 11") because he was not adequately advised of the charges against him and the consequences of his guilty plea, and there was an insufficient factual basis to support his guilty plea.  He also argues that his counsel provided ineffective assistance throughout his criminal proceedings.  For the reasons set forth below, we affirm Bynum's convictions and decline to address his ineffective assistance claim in this direct appeal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Information, Plea Agreement, and Factual Basis

Bynum was charged by information with one count of possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base and a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (C) and one count of knowingly carrying a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Bynum agreed to plead guilty to both counts pursuant to a written plea agreement and agreed to waive his right to prosecution by indictment.  The plea agreement provided in relevant part that: (1) as to count one, the sentencing court "must impose a statutory minimum term of imprisonment of five years, and may impose a statutory maximum term of imprisonment of up to forty years" and (2) as to

2

count two, the sentencing court "must impose a statutory minimum term of five years of imprisonment and may impose a statutory maximum term of imprisonment up to life, which is to run consecutive to any other term of imprisonment."  The plea agreement also reflected that the parties agreed to jointly recommend that the quantity of cocaine base involved in the offense is 228 grams.

Bynum and his counsel also signed a factual proffer that described law enforcement's search of Bynum's home which uncovered crack cocaine, distribution paraphernalia, firearms, and U.S. currency.  Law enforcement found the following items in Bynum's bedroom: his wallet and crack cocaine lying on his nightstand, powder cocaine in his dresser, a loaded .40 caliber handgun underneath his pillow, a loaded .38 revolver in his closet, and a rifle at the foot of his bed.  More crack and powder cocaine, narcotics paraphernalia, and U.S. currency were discovered in a second bedroom.  In a post-Miranda[1] interview, Bynum stated that all of the firearms, narcotics, and money found in his residence were his and that he owned the firearms for protection.  The total weight of cocaine base discovered in Bynum's residence was 228 grams.  The factual basis finally stated: "Defendant possessed the narcotics with intent to distribute them.  Defendant further possessed the firearms discovered in his residence in furtherance of distributing narcotics."

B.    Change of Plea Hearing

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3

At Bynum's change of plea hearing, he was placed under oath and answered the court's questions. Bynum stated that he had a high-school education, had not been treated for mental illness or drug addiction, had fully discussed the information and his case with his attorney, and that he was satisfied with the advice he received from his attorney. He stated that he understood the two charges that he was pleading guilty to.

The sentencing court asked the assistant United States Attorney to set forth the elements of the offenses Bynum was pleading guilty to. With respect to count two, she stated:

> There are three elements of the second offense, the first of which is that the Defendant committed the drug trafficking offense as charged; second, that the Defendant knowingly possessed a firearm; and, third, that the Defendant possessed the firearm during in relation to the drug trafficking crime that was charged.

Bynum's counsel agreed that this was an accurate statement of the elements. Bynum's counsel stated to the sentencing court the steps he had taken to familiarize Bynum with the charges, the Government's evidence, his right to proceed to trial, and the consequences of a guilty plea. Mr. Bynum agreed with counsel's descriptions of such steps.

Mr. Bynum stated that he had read the plea agreement and discussed it fully with his counsel. The sentencing court next reviewed the plea agreement, explaining that it could impose an above or below guidelines sentence up to the

4

statutory maximum.  As to count one, the court explained that it was required to impose a minimum term of five years' imprisonment and could impose a statutory maximum term of forty years' imprisonment.  As to count two, the court explained that it was required to impose a minimum term of five years' imprisonment, and it could impose a sentence up to life, "to run consecutive to any other term of imprisonment."  The court asked Bynum if he understood the maximum possible sentence and he responded in the affirmative.  Bynum also confirmed, among other things, that he agreed to jointly recommend that 228 grams of cocaine base was involved in his offense and understood the rights that he was giving up by pleading guilty.  He confirmed that he was pleading guilty because he was, in fact, guilty.

Next, the court reviewed the factual proffer with Bynum, who confirmed that he had read it and discussed it with counsel prior to signing it.  He confirmed that, had the case proceeded to trial, the Government would have proven the facts contained in the factual proffer—which the court summarized on the record— beyond a reasonable doubt.  The court accepted Bynum's plea and adjudicated him guilty.

### C.    First Sentencing Hearing

Prior to Bynum's sentencing hearing, United States Probation prepared a Presentence Investigation Report ("PSR"), which, among other things, stated that, as to count one, Bynum was subject to a statutory minimum term of imprisonment

of five years and maximum of forty years and, as to count two, Bynum faced a statutory minimum term of imprisonment of five years that "shall run consecutive to any other term of imprisonment."[2]  As to applicable Guideline provisions, the PSR stated that the Guideline imprisonment range was 57 to 71 months and that count two requires 60 months imprisonment, to run consecutively to any other term.  This Guideline calculation did not take into account that Bynum was subject to a statutory mandatory minimum—which was higher than the stated Guideline range—as to count one.

Bynum did not object to the PSR but, through counsel, filed a motion for downward departure.  This motion correctly recounted the offenses Bynum had pleaded guilty to, acknowledged that he was not eligible for safety valve relief pursuant to U.S.S.G. § 5C1.2(a)(2), and requested a downward departure on count one.

At his sentencing hearing, Bynum confirmed that he had reviewed the PSR with counsel.  The Government requested a 57-month sentence, at the low end of the Guideline range, as to count one "in addition to the" 60-month sentence as to count 2.  The Government stated that it was "unfortunate" that the safety valve could not apply in this case because "Mr. Bynum's son was selling quite a lot of

---

[2] The PSR contained a scrivener's error that referenced "Count Three" instead of "Count Two" but this error was corrected in the PSR

6

narcotics, and that's how we actually came across Mr. Bynum.  He was using Mr. Bynum's home to sell drugs . . . ."  Defense counsel repeated its request for a downward variance, asking that the court grant a downward variance to one day on count one followed by the consecutive five-year sentence as to count 2.

The sentencing court asked the Government to clarify its earlier statement regarding Bynum's son's participation in drug activities, because the PSR reflected that Bynum admitted that all of the drugs within the residence belonged to him. The Government responded that Bynum was working with his son to traffic narcotics, but was doing a smaller portion of the selling compared to his son.  The Government stated that, as to Bynum's admission that all of the drugs were his, it thought "to some extent he was protecting his son, which is sort of understandable."  It stated that it was somewhat difficult to parse out which drugs belong to who and that it thought Bynum's admission "is more of a fatherly statement than necessarily an accurate reflection of . . . whose those drugs actually were."  The sentencing court granted Bynum's motion for a downward departure in part and sentenced him to a term of 84 months total, compromised of 24 months as to count one and 60 months, to run consecutively to count one, as to count two.

D.     Second Sentencing Hearing

A week later, Bynum returned for resentencing. The sentencing court stated that, after Bynum's first sentencing, it received a memorandum from United States

7

Probation stating that Bynum must be resentenced because count one was subject to a mandatory minimum sentence that the sentencing court had no discretion to vary downward from. Bynum's counsel stated that he had explained the law to his client, including that if the current sentence remained in place it would be overturned on appeal. Bynum's counsel also stated that he had explained to his client that he could ask to have his plea set aside based upon his prior belief that he would be sentenced to a shorter term. Counsel stated that he was "quite sure that if [he] asked the Court to set [Bynum's sentence] aside, that this Court would do so," to which the sentencing court responded, "correct." Bynum's counsel then indicated that, despite being advised of his ability to request that his plea be withdrawn, Bynum did not want to proceed to trial.

Bynum then addressed the sentencing court and said "this may be a ten-year term, right? I may not have ten years to give you because I got congestive heart failure, you know. And I'm just asking on the mercy of the Court, you know, if you could do maybe a split or something?" The court then explained that it did not have discretion to do so and that she must impose the mandatory minimums. The Government then recounted the sentencing benefits that Bynum received by pleading guilty—namely that the Government agreed to charge a five-year instead of a ten-year mandatory minimum as to count one. The Government also

8

reiterated that it has always been the parties' agreement that there would be a five-year mandatory minimum as to count one.

The sentencing court then announced that Bynum was sentenced to a term of imprisonment of 120 months—60 months as to count one and a consecutive term of 60 months as to count two. The sentencing court informed Bynum that he had fourteen days after entry of judgment to file notice of appeal.

### E.    First § 2255 Proceeding

A few months later, Bynum filed a pro se 28 U.S.C. § 2255 motion, asserting eight ineffective assistance of counsel claims, including a claim that counsel had failed to file an appeal despite being instructed to do so. A magistrate judge determined that the failure to file appeal claim warranted an evidentiary hearing and appointed a public defender to represent Bynum. Bynum's § 2255 counsel and the magistrate judge both made clear that the scope of this hearing was limited to the issue of the notice of appeal. Bynum testified that—among other things regarding his understanding of the plea, factual proffer, and sentencing proceedings—he instructed his sentencing counsel to file a notice of appeal but he did not do so.

The magistrate judge issued a report and recommendation recommending that Bynum's § 2255 motion be granted solely as to the failure to file a notice of appeal claim and that Bynum be permitted to file an out-of-time appeal. It was

9

recommended that the remaining claims be dismissed without prejudice. The district court adopted the report and recommendation. The sentencing court then reinstated the judgement reflecting Bynum's 120-month sentence, which Bynum presently appeals from.

## II.    PLEA COLLOQUY

A.    Legal Standards

Bynum contends that his guilty plea should be vacated because he did not understand the nature of his charges or the consequences of his guilty plea. When a defendant fails to raise a constitutional or Rule 11 violation before the district court, we review only for plain error. United States v. Moriarty, 429 F.3d 1012, 1018–19 (11th Cir. 2005) (per curium). To establish plain error, a defendant must show that "there is (1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 1019. If these conditions are met, we may then exercise our discretion to notice a forfeited error, "but only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks omitted) (alterations in original). "Under plain error review, the defendant bears the burden of persuasion with respect to prejudice or the effect on substantial rights." Id. (quotation marks omitted). A defendant seeking a reversal of his conviction on the ground that the district court committed plain error under Rule 11 in accepting his guilty plea must show a reasonable probability that, but for the

error, he would not have entered the plea. United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004). On plain-error review, we "may consult the whole record when considering the effect of any error on substantial rights." United States v. Monroe, 353 F.3d 1346, 1350 (11th Cir. 2003) (quotation marks omitted). "There is a strong presumption that the statements made during a plea colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).

"The foundational principles governing guilty plea procedures derive from constitutional notions of due process." United States v. Presendieu, 880 F.3d 1228, 1238 (11th Cir. 2018). "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." McCarthy v. United States, 394 U.S. 459, 466 (1969). "[A] plea does not qualify as intelligent unless a criminal defendant receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Bousley v. United States, 523 U.S. 614, 618 (1998) (quotation marks omitted).

"Building on these fundamental constitutional principles, Rule 11(b) sets out procedures that district courts must follow when accepting guilty pleas." Presendieu, 880 F.3d at 1238. Under Rule 11, before a court can accept a guilty plea, it must inform the defendant of his rights should he plead not guilty, the nature of the charges against him, the potential penalties, and the court's obligation

11

to calculate his advisory guideline range. <u>See</u> Fed. R. Crim. P. 11(b)(1)(B)-(E), (G)-(M). The court must also explain that a guilty plea waives the defendant's trial rights and ensure that the plea is entered voluntarily and is supported by a sufficient factual basis. <u>See</u> Fed. R. Crim. P. 11(b)(1)(F), (b)(2)-(3). Further, the court must explain that the defendant can be prosecuted for perjury for testifying falsely under oath. <u>See</u> Fed. R. Crim. P. 11(b)(1)(A).

Rule 11 is "designed to address the three core objectives" necessary for a knowing and voluntary plea: (1) the guilty plea is free of coercion; (2) the defendant understands the nature of the charges against him; and (3) the defendant understands the direct consequences of the guilty plea. <u>Presendieu</u>, 880 F.3d at 1238 (quotation marks omitted). Whether the court has complied with the second core objective depends on a variety of factors, including the complexity of the offense and the defendant's intelligence and sophistication. <u>Id.</u> There is no "simple or mechanical rule" that must be applied in determining whether the district court adequately informed the defendant of the nature of the charges brought against him. <u>United States v. Camacho</u>, 233 F.3d 1308, 1314 (11th Cir. 2000) (quotation marks omitted). We have held that, for simple charges, "a reading of the indictment, followed by an opportunity given to the defendant to ask questions about it, will usually suffice." <u>United States v. James</u>, 210 F.3d 1342, 1344–45 (11th Cir. 2000) (quotation marks omitted).

12

"[I]n some cases, a factual proffer may set forth in such detail the facts of the crime that it effectively incorporates some elements of the offense." Presendieu, 880 F.3d at 1239. In Presendieu, we concluded that, although the district court did not explicitly state each of the elements of the charge in its own voice, all of the necessary factual material was contained in the factual proffer as recited. Id. In United States v. Wiggins, the defendant argued that he was not informed of the charges because the district court had not separately outlined each element of the offense or asked him if he understood those elements. 131 F.3d 1440, 1442 (11th Cir. 1997) (per curiam). We determined that there was no plain error because the district court had incorporated the substance of the elements of the charge by telling the defendant to listen to the government's factual proffer, the defendant unequivocally admitted to committing the crime, and the district court made a factual finding that the defendant had entered an informed guilty plea based on its observation of him at the plea colloquy. Id.

To comply with the third core objective, the district court must inform the defendant of the rights that he gives up by pleading guilty, the court's authority to impose certain punishments, and the possibility of a perjury prosecution for false statements during the plea colloquy. See Moriarty, 429 F.3d at 1019; see also Fed. R. Crim. P. 11(b)(1). "[W]here a signed, written plea agreement describing a mandatory minimum sentence is specifically referred to during a Rule 11 plea

13

colloquy, the core principle that the defendant be aware of the consequences of his plea has been complied with." United States v. Jones, 143 F.3d 1417, 1420 (11th Cir. 1998) (per curiam).

It is unlawful for a person to knowingly and intentionally possess with the intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). A person who possesses with the intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." Id. § 841(b)(1)(B). Section 924(c)(1)(A) provides, in relevant part, that "any person, who during and in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," will receive a term of not less than five years' imprisonment imposed in addition to the punishment provided for the drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A)(i). The language from prong one, "during and relation to," is broader than the language from prong two, "in furtherance of." United States v. Madden, 733 F.3d 1314, 1318 (11th Cir. 2013). We have held that the district court plainly erred where it constructively amended the indictment by replacing "in furtherance of" with "during and relation to" in the jury instructions because it broadened the possible basis for conviction. Id. at 1318–19. We concluded that the constructive

14

amendment prejudiced the defendant because he may have been convicted on a charge that was not in the indictment. Id. at 1322–23.

Under § 924(c), we have required that, for a conviction under the possession prong, the government must "establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002). "[T]he presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction." Id. at 1253. The court may consider a variety of factors to establish the nexus between the gun and the drug operation, including:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

Id. (quotation marks omitted). We have provided that a defendant who was found under the covers of his bed, along with a gun, a quantity of methamphetamine, and several hundred dollars in cash "easily meets" the "in furtherance" requirement. United States v. Lopez-Garcia, 565 F.3d 1306, 1322 (11th Cir. 2009). Specifically, we have emphasized the accessibility of the gun and the proximity of the gun to the drugs and drug profits. Id.; see also Timmons, 283 F.3d at 1253 (concluding that evidence of a "bullet proof vest, crack cocaine on the stove and under the cushions of the couch, two fully loaded firearms on top of the oven and ammunition inside

15

the oven in the living room of his apartment . . . was sufficient for the jury to have concluded that Timmons was guilty of possessing the firearms 'in furtherance of' drug trafficking").

### B.    Discussion

Bynum contends that his guilty plea should be vacated because he did not understand the nature of his charges or the consequences of his guilty plea.  He first contends that he believed that he pleaded guilty to a felon in possession of a firearm charge, which did not have a mandatory minimum sentence. In making this argument, Bynum points to his testimony and his sentencing counsel's testimony during the § 2255 hearing.  At his change of plea hearing, however, Bynum confirmed that he had received a copy of the information containing the two charges against him and that he had discussed these offenses with counsel.  Even if he was misinformed by counsel about the nature of these charges, the court made clear at his change of plea hearing that he was pleading guilty to one count of possession with intent to distribute 28 grams or more of cocaine bases and one count of possession of a firearm in furtherance of a drug-trafficking crime.

Bynum also claims that he did not understand the charges against him because at his change of plea hearing, the Government inaccurately stated the elements as to count two—stating that he possessed the firearm "during [and] in relation to" a drug-trafficking crime instead of "in furtherance of" said drug-trafficking crime.

16

Bynum's sentencing counsel confirmed that the Government accurately stated the elements and Bynum was not asked if he had any questions. Notwithstanding this misstatement of an element of count two at the change of plea hearing, the plea agreement—which Bynum confirmed he had read and discussed with his attorney—accurately stated the element. Moreover, the factual proffer described that police located crack cocaine in Bynum's bedroom next to his wallet on the nightstand, powder cocaine in Bynum's dresser, a loaded .40 caliber handgun underneath his pillow, a loaded .38 revolver in his closet, and a rifle at the foot of his bed. Bynum agreed that he possessed these narcotics with the intent to distribute them and that he possessed the firearms in his residence in furtherance of distributing the narcotics. He also confirmed that, these facts were true and correct and that, had he proceeded to trial, the Government would have been able to prove the facts within the factual proffer beyond a reasonable doubt. Accordingly, despite misstating one of the elements to count two during the change of plea hearing, the Government incorporated the elements of the offense into its plea offer—which it had Bynum listen to at the hearing and which Bynum stated were true and correct. See Presendieu, 880 F.3d at 1239–41; Wiggins, 131 F.3d at 1442.

Second, Bynum contends that he did not understand that he was facing a mandatory ten-year minimum sentence based on his counsel's advice and the sentencing court's explanation during his plea colloquy. The following mistakes

17

regarding the understanding of the mandatory total ten-year imprisonment, mostly occurring after Bynum's plea, took place: (1) probation neglected to make count one's low end of the guideline range reflect the statutory mandatory minimum and neither party objected; (2) Bynum's sentencing counsel moved for a downward departure, requesting a sentence of one day, as to count one—relief the sentencing court did not have the discretion to order; (3) the Government requested a sentence of 57 months' imprisonment as to count one—when the sentencing court did not have discretion to impose anything less than 60 months imprisonment; (4) the court initially sentenced Bynum to 24 months as to count one; and (5) Bynum asked the court if he was facing a ten year sentence and asked if the court "could do maybe a split or something."  Despite all of the foregoing, the district court did not plainly err in advising Bynum about the consequences (namely, the two consecutive mandatory minimum terms of imprisonment) of his guilty plea.  At the plea hearing, the district court properly explained that count one had a statutory minimum of five years and that count two had a statutory minimum of five years "to run consecutive to any other term of imprisonment." Although the court only asked Bynum if he understood the maximum possible sentences, Bynum confirmed that he had read and discussed the plea agreement—which correctly stated the consecutive mandatory minimums and which Bynum also signed—with his counsel. See Medlock, 12 F.3d at 187 ("There is a strong presumption that the statements made during the colloquy

18

are true."). Because both the district court and the plea agreement both properly advised Bynum of the mandatory minimum sentences, he cannot show that the district court plainly erred in advising him of the consequences of his plea. See Jones, 143 F.3d at 1420 ("We hold that where a signed, written plea agreement describing a mandatory minimum sentence is specifically referred to during a Rule 11 plea colloquy, the core principle that the defendant be aware of the consequences of his plea has been complied with.").

Third, Bynum contends that he would not have pleaded guilty had he been accurately informed of the charges against him and the penalties they carried. At his second sentencing hearing, Bynum was given the opportunity to withdraw his guilty plea but did not do so. Despite Bynum's arguments that he was not given the chance to understand that he could withdraw the plea and that the district court failed to address him personally, (1) counsel stated at the hearing that he discussed the possibility of withdrawing the plea with Mr. Bynum; (2) counsel stated that Bynum indicated that he did not wish to proceed to trial; (3) the sentencing court stated that, if requested, it would set aside Bynum's plea; (4) the sentencing court addressed Bynum personally, gave him the opportunity to speak on the matter, and Bynum never stated that he wished to withdraw his plea. Bynum has therefore not established that, but for the alleged errors, he would not have entered his plea. See Dominguez Benitez, 542 U.S. at 83; Moritarty, 429 F.3d at 1019.

19

Fourth, Bynum contends that the sentencing court plainly erred during his plea colloquy. First, he contends that the court did not sufficiently inquire about his understanding of the charges and the mandatory minimums they carried. The court placed Bynum under oath and warned him that he could be prosecuted for perjury if he did not tell the truth. As outlined above, Bynum confirmed that he had read and discussed the plea agreement—which correctly stated the mandatory minimums and which Bynum also signed—with his counsel. We presume these statements to be true. See Medlock, 12 F.3d at 187. The court also properly explained that count one had a statutory minimum of five years and that count two had a statutory minimum of five years "to run consecutive to any other term of imprisonment" at the change of plea hearing. The court informed Bynum of his rights should he decide to plead not guilty. Moreover, the court encouraged Bynum to ask questions if he did not understand anything in the plea colloquy and informed him of his ability to speak with his attorney off the record if requested.

Fifth, Bynum contends that the district court failed to address him personally during his second sentencing hearing because it was clear he did not understand the consequences of his plea, and, had he understood, he would have withdrawn his plea. As outlined above both the court and the plea agreement informed Bynum of the mandatory minimum consecutive sentences, and Bynum's claim that he would have withdrawn his plea is belied by his failure to do so at the second sentencing hearing

20

despite his counsel raising the possibility with him and the court confirming that it would permit him to do so.

Finally, Bynum contends that the plea was not supported by a sufficient factual basis. As to count one, Bynum contends that the only evidence supporting the drug quantity was his own statements, which the Government undermined at the sentencing hearing by stating that it believed he only made such statements to protect his son. As to count two, Bynum contends that the factual basis establishes only that he possessed firearms in close proximity to drugs but did not show a nexus between the guns and drugs nor did it indicate the amount of drugs found in his bedroom. The court did not err in determining that the factual basis for the plea was sufficient. First, Bynum confirmed that he read and fully discussed the factual basis with his counsel, that those facts were true, and that if the case proceeded to trial the Government would prove those facts beyond a reasonable doubt. He also confirmed that he was pleading guilty because he was, in fact, guilty. For count one, the factual proffer relied on Bynum's post-Miranda statements that all of the firearms, narcotics, and U.S. currency within the residence were his. He signed the factual proffer, which also stated that the total weight of cocaine base found in the residence was 228 grams and that he possessed the drugs with the intent to distribute them. For count two, the factual proffer (again, which Bynum signed) stated that he possessed the firearms in furtherance of the drug-trafficking scheme. As previously stated,

21

despite the Government misstating an element of count two at the plea hearing, the facts as outlined in the signed factual proffer—namely that police recovered two loaded firearms from Bynum's bedroom in close proximity to crack and powder cocaine, U.S. currency, and Bynum's wallet—nonetheless support Bynum's conviction.  See Madden, 733 F.3d at 1318–19.  Accordingly, the district court did not plainly err in determining that the factual basis supported Bynum's plea as to both counts.  For all of the foregoing reasons, we conclude that the district court did not plainly err, either as a matter of due process or under Rule 11, in accepting Bynum's guilty plea.

## III.  INEFFECTIVE ASSISTANCE CLAIMS

### A.    Legal Standards

We review ineffective assistance of counsel claims de novo, as a mixed question of fact and law.  Caderno v. United States, 256 F.3d 1213, 1216–17 (11th Cir. 2001) (per curiam).

We "will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."  United States v. Patterson, 595 F.3d 1324, 1328 (11th Cir. 2010) (quotation marks omitted).  A 28 U.S.C. § 2255 motion is the preferred means of deciding an ineffective-assistance claim, "even if the record contains some indication of deficiencies in counsel's performance."  Id. (quotation marks

22

omitted).  Nevertheless, we will consider ineffective-assistance claims "if the record is sufficiently developed."  Id. (quotation marks omitted).

In United States v. Puentes-Hurtado, we declined to address the defendant's ineffective-assistance claim despite the record containing "some evidence concerning [counsel's] performance" because it was not sufficiently developed to address the claim.  794 F.3d 1278, 1285 (11th Cir. 2015).  In that case, the defendant argued that his counsel provided ineffective assistance because counsel advised him that he would be sentenced based on no more than five kilograms of cocaine, even though the indictment and the plea agreement both indicated that the quantity of cocaine involved in the narcotics conspiracy was five kilograms or more.  Id.  In declining to address the ineffective-assistance claim, we noted that there was no testimony from the defendant or his counsel concerning their discussions about or their understanding of the plea agreement or drug quantity issues, and there was no testimony from the defendant concerning whether he would have insisted on going to trial had he known that his advisory guideline range would not be limited to 5 kilograms of cocaine and could be based on 244 kilograms.  Id.

In United States v. Camacho, the defendant raised three claims of ineffective assistance of counsel in a post-trial motion.  40 F.3d 349, 354–55 (11th Cir. 1994), overruled on other grounds by United States v. Sanchez, 269 F.3d 1250, 1277

23

(11th Cir. 2001) (en banc). The district court held an evidentiary hearing, but only on one of the claims. Id. at 355. When the defendant raised the same three claims in his direct appeal, we declined to address the two claims that the district court had not considered at the evidentiary hearing because the record was insufficiently developed. Id. Concluding that the defendant's counsel had not been ineffective as to the third claim, we affirmed the conviction but noted that the defendant's remaining claims of ineffective assistance could be raised in a subsequent § 2255 proceeding. Id.

### B.    Discussion

In this case, Bynum argues that his counsel for the change of plea hearing and sentencing was ineffective because he misadvised Bynum about the nature of his charges and consequences of his plea, overlooked obvious defenses, and failed to subject the charges to meaningful adversarial testing. He further asserts that, thanks to the § 2255 hearing below, there is sufficient record evidence for this court to consider his ineffective assistance claims.

Because the record is not fully developed, we decline to address Bynum's remaining claims of ineffective assistance of counsel. See Puentes-Hurtado, 794 F.3d at 1285 ("Although the record contains some evidence concerning [counsel's] performance, it is not sufficiently developed to allow us to address the ineffective assistance of counsel claim."); Patterson, 595 F.3d at 1328. Even though this case

is unlike many other cases where ineffective assistance claims are raised on direct appeal by virtue of there being an evidentiary hearing in Bynum's § 2255 proceeding before the district court, that hearing was limited to the issue of whether counsel was defective in failing to file a notice of appeal.  Testimony at the § 2255 hearing did touch on the plea agreement and contained some evidence concerning counsel's performance but Bynum did not have a full and unfettered opportunity to develop the record regarding all of his ineffective assistance of counsel claims and the magistrate judge did not address them.  We decline to consider Bynum's ineffective assistance claims in this direct appeal but he may raise those claims in a subsequent § 2255 proceeding.  See Camacho, 40 F.3d at 355.

**AFFIRMED.**