[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12770
_____

D.C. Docket No. 1:10-cr-00490-TCB-LTW-7


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAURO PUENTES-HURTADO,
a.k.a. Victor,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 22, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and ROSENTHAL,[*]
District Judge.

_____

[*] Honorable Lee H. Rosenthal, United States District Judge for the Southern District of
Texas, sitting by designation.

JORDAN, Circuit Judge:

When he pled guilty to narcotics and money laundering conspiracy charges, Lauro Puentes-Hurtado signed a plea agreement which contained a "limited" appeal waiver. That waiver prohibited Mr. Puentes-Hurtado from appealing or collaterally attacking his conviction and sentence "on any ground," unless the government appealed or the sentence was based on an upward departure or variance. *See* D.E. 338 at 18.

Despite the appeal waiver, Mr. Puentes-Hurtado pursued this appeal, arguing that his counsel's ineffective assistance rendered his guilty plea involuntary, that the district court violated Rule 11 by failing to inform him of the nature of the drug conspiracy charge and by failing to secure a sufficient factual basis for the guilty plea, and that the government breached the plea agreement and caused the district court to commit procedural error in calculating the advisory guideline range for the narcotics conspiracy charge. We hold, like the rest of our sister circuits, that these claims are not barred by the appeal waiver in Mr. Puentes-Hurtado's plea agreement. On the merits, however, we conclude that Mr. Puentes-Hurtado is not entitled to the relief he seeks in this direct appeal.

## I

A federal grand jury charged Mr. Puentes-Hurtado with conspiring to possess five kilograms or more of cocaine and 50 grams or more of

2

methamphetamine with the intent to distribute in violation of 21 U.S.C. § 846 (Count 1), and conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 3).  Mr. Puentes-Hurtado pled guilty to these charges pursuant to a written plea agreement which contained the appeal waiver language described above.

At the Rule 11 colloquy, the district court summarized the two charges for Mr. Puentes-Hurtado, but did not specifically explain the elements of those charges to him.  *See* D.E. 410 at 4-5.  The district court also discussed the appeal waiver and explained its consequences.  Mr. Puentes-Hurtado said that he understood the provision, and that he entered into the plea agreement freely and voluntarily.  *See id*. at 7-9.  The district court then asked the government to provide a factual basis for the plea.

The government proffered that Mr. Puentes-Hurtado was involved in a Mexican drug-trafficking organization, called El Guero, headed by a man known only as Jairo.  Mr. Puentes-Hurtado was responsible for the transportation of cocaine from Mexico to Atlanta and the subsequent movement of the drug proceeds from Atlanta to Mexico.  *See id.* at 10.

Through surveillance, the government ascertained that approximately five kilograms of cocaine were destined to arrive in Atlanta on March 5, 2010, with a wholesale price of $27,000 per kilogram.  On March 9, 2010, government agents

intercepted a telephone call which revealed that members of El Guero planned to transport drug proceeds back to Mexico. The government tracked several vehicles that departed from a stash house and later stopped at a gas station and a Wal-Mart. Subsequently, local authorities conducted a traffic stop of the vehicles, one of which was driven by Mr. Puentes-Hurtado. *See id.* at 10-11.

During their search of the vehicles, the police discovered 52 bundles of cash—totaling $1.2 million—hidden in wheel panels and secret compartments. Scraps of paper on the bundles appeared to denote the parties who were to receive the money. The police also recovered several cell phones, one of which listed Jairo as a contact and contained a text message directing someone to "call Jairo." *See id*. at 11.

Additionally, the police reconstructed about 85% of a receipt, dated March 5, 2010, which corresponded to the alleged cocaine delivery date, as well as a video that appeared to show Mr. Puentes-Hurtado at a Wal-Mart purchasing the supplies that were used to wrap the bundles of money. The government further advised the district court that it expected David Sanchez, one of the alleged co-conspirators, to corroborate Mr. Puentes-Hurtado's involvement in the drug conspiracy. *See id*. at 12.

After the government finished its proffer, the following exchange took place between the district court and Mr. Puentes-Hurtado:

4

THE COURT:  Mr. Hurtado, did you understand everything that [the government] just said?

[MR. PUENTES-HURTADO]:  Yes.

THE COURT:  And do you generally agree with [the government's] description of the crime and how it occurred?

[MR. PUENTES-HURTADO]:  Not on everything.

THE COURT:  But most of it?

[MR. PUENTES-HURTADO]:  Yes.

THE COURT:  Are you in fact guilty of Counts 1 and 3 of the superseding indictment?

[MR. PUENTES-HURTADO]:  I am guilty of transporting the money, because I did deliver it in El Paso, Texas.

THE COURT:  You need to be more specific, are you guilty of Count 1 of the indictment?

[MR. PUENTES-HURTADO]:  Yes.

THE COURT:  How about Count 3?

[MR. PUENTES-HURTADO]:  Yes.

*Id.* at 12-13.  The district court then turned its attention to Mr. Puentes-Hurtado's

counsel, Donald Henderson.

THE COURT:  Mr. Henderson, have you reviewed the government's evidence and satisfied yourself that it is in your client's best interest to plead guilty to these two charges?

MR. HENDERSON:  Yes I have, your honor.  And with regard to his response to Count 3, I had a little trouble understanding

5

the translation myself, so I could see where it might cause him some pause before he answered yes.

THE COURT: Right. Do you believe that he is knowingly and voluntarily and freely waiving his constitutional rights this morning?

[MR. PUENTES-HURTADO]: Yes, your honor.

*Id.* at 13. Satisfied that there was a sufficient basis, the district court accepted Mr. Puentes-Hurtado's guilty plea.

A probation officer later prepared a presentence investigation report which recommended a base offense level of 38 for the narcotics charge under U.S.S.G. § 2D1.1(c)(2), based on a drug quantity of 244 kilograms of cocaine. When the money laundering conspiracy charge and other enhancements and reductions were factored in, Mr. Puentes-Hurtado faced an advisory guideline range of 292-365 months in prison, including a statutory minimum sentence of 120 months.

At the sentencing hearing, Mr. Puentes-Hurtado objected to the probation officer's calculation of the drug quantity. His counsel, Mr. Henderson, argued that, based on his discussions with the government, he believed that Mr. Puentes-Hurtado was only pleading guilty to five kilograms or more of cocaine, which he interpreted as not more than five kilograms of cocaine (and a lower base offense level of 32). *See* D.E. 411 at 3-4.

Mr. Henderson said that he "in no way anticipated" that the base offense level would be higher than 32 and had advised Mr. Puentes-Hurtado based on that

6

understanding.  Mr. Henderson explained that "if [the government knew that the drug quantity amount] was 244 kilograms, they would have put 150" kilograms, instead of five kilograms, in the plea agreement.  *See id.* at 4-5.

The district court asked Mr. Henderson if the language in the plea agreement ("more than five" kilograms of cocaine) allowed the government to prove that the drug quantity was 244 kilograms.  When Mr. Henderson reluctantly conceded that the government could assert an amount higher than five kilograms, *see id.* at 5-6, the district court said that it had "some empathy for Mr. Henderson as a lawyer if he advised his client that [the amount] was [limited] to five [kilograms]," *id.* at 8, and overruled Mr. Puentes-Hurtado's objection to the drug quantity:

> [T]he scope of [Mr. Puentes-Hurtado's] criminal activity is accurately described in the PSR.  It was extensive.  The amount of drugs, the quantity of drugs involved were extensive.  He was at the top of the chain, that is evident from the reading the PSR, and particularly the portions to which there were no objection.  So I do find that his scope of criminal activity was extensive and as much as anyone else involved, and therefore it is not inappropriate to hold him accountable for the 244 kilograms of cocaine as detailed in the PSR.

*Id*. at 10.

The district court confirmed that Mr. Puentes-Hurtado faced an advisory guideline range of 292-365 months in prison, with a statutory minimum sentence of 120 months.  *See id*. at 14.  After taking into consideration the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court granted the parties' joint recommendation for a variance, which reduced the advisory guideline range to

7

210-262 months in prison, including a statutory minimum sentence of 120 months. *See id.* The government recommended a sentence of 210 months, while Mr. Henderson advocated for a sentence of somewhere between 150 and 180 months. *See id.* at 14-15. The district court sentenced Mr. Puentes-Hurtado to a total of 180 months' imprisonment, to be followed by five years of supervised release. Significantly, the district court stated that "this would have been the court's sentence even if the court got it wrong [on the drug quantity issue] because . . . this is the appropriate sentence either way[.]" *Id.* at 19.

## II

The government argues that Mr. Puentes-Hurtado's claims are barred by the appeal waiver in the plea agreement. Exercising plenary review, *see, e.g., United States v. Johnson,* 541 F.3d 1064, 1066 (11th Cir. 2008), we reject the government's contention.

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted). It follows, therefore, that an appeal waiver or collateral attack waiver which is part of a guilty plea is unenforceable if the plea itself is involuntary or unintelligent. "Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary, or

8

otherwise unenforceable, then the defendant is entitled to appeal." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). *Accord United States v. Carreon-Ibarra*, 673 F.3d 358, 362 n.3 (5th Cir. 2012) (appeal waiver "cannot be enforced 'to bar a claim that the waiver itself—or the agreement of which it was a part—was unknowing or involuntary'"); *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (explaining that a court will not enforce a waiver of appellate rights where a defendant challenges "the constitutionality of the process by which he waived those rights"); *De Roo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek . . . post-conviction relief does not waive [the] defendant's right to argue . . . that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel.").

As traditional contract principles generally apply to plea agreements, *see Allen v. Thomas*, 161 F.3d 667, 671 (11th Cir. 1998), appellate review is also permitted when a defendant claims that the government breached the very plea agreement which purports to bar him from appealing or collaterally attacking his conviction and sentence. *See, e.g., United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001) ("We agree with our sister circuits that a party's waiver of the right to seek appellate review is not enforceable where the opposing party breaches a plea agreement."). Similarly, an appeal waiver does not bar a Rule 11 claim that there

is an insufficient factual basis to support a guilty plea. *See United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008); *United States v. Adams*, 448 F.3d 492, 497-98 (2d Cir. 2006); *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999). Such a claim "goes to the heart of whether [the] guilty plea, including the waiver of appeal, is enforceable." *Portillo-Cano*, 192 F.3d at 1250.

All of Mr. Puentes-Hurtado's claims come within the categories described above. We therefore hold that these claims are not barred by the appeal waiver in the plea agreement, and move on to the merits.

### III

As we explain, Mr. Puentes-Hurtado is not entitled to relief on his claims.

### A

Mr. Puentes-Hurtado first argues that his plea was involuntary and unintelligent because his counsel, Mr. Henderson, rendered ineffective assistance under the Sixth Amendment standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). According to Mr. Puentes-Hurtado, Mr. Henderson incorrectly advised him that he would be sentenced based on no more than five kilograms of cocaine, even though the indictment and the plea agreement both indicated that the quantity of cocaine involved in the narcotics conspiracy was five kilograms or more. *See* Appellant's Br. at 25-35.

We generally do not address ineffective assistance of counsel claims on direct appeal, *see United States v. Hilliard*, 752 F.2d 578, 580 (11th Cir. 1985), and we see no reason to depart from that general approach here.  Although the record contains some evidence concerning Mr. Henderson's performance, it is not sufficiently developed to allow us to address the ineffective assistance of counsel claim.

To establish *Strickland* prejudice in this context, Mr. Puentes-Hurtado must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  We do not have any testimony from Mr. Henderson or from Mr. Puentes-Hurtado concerning their discussions about (or their understandings of) the plea agreement or drug quantity issues.  We also do not have any testimony from Mr. Puentes-Hurtado about whether he would have insisted on going to trial had he known that his advisory guideline range on the narcotics charge would not be limited to five kilograms of cocaine and could be based on 244 kilograms.  We think the best course is to allow Mr. Puentes-Hurtado, if he wishes, to file a motion to vacate under 28 U.S.C. § 2255, and to have the necessary evidence on the performance and prejudice prongs of *Strickland* and *Hill* presented in that proceeding.  *See generally Massaro v. United States*, 538

U.S. 500, 504 (2003) ("in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance").

## B

Mr. Puentes-Hurtado's second challenge is based on alleged violations of Rule 11 by the district court. *See* Fed. R. Crim. P. 11(b)(1)(G), (b)(3). According to Mr. Puentes-Hurtado, the district court failed to inform him of the nature of the narcotics conspiracy charge, and failed to secure a sufficient factual basis for his plea to that charge. *See* Appellant's Br. at 37-43.

Because Mr. Puentes-Hurtado did not assert these Rule 11 violations in the district court, our review is only for plain error. *See United States v. Rodriguez*, 751 F.3d 1244, 1251 (11th Cir. 2014) (Rule 11 violations raised for the first time on appeal are reviewed for plain error). To carry his burden of demonstrating plain error, Mr. Puentes-Hurtado must show that there was error, that the error was plain, and the error affected his substantial rights. *See* Fed. R. Crim. P. 52(b); *United States v. Davila*, 133 S.Ct. 2139, 2147 (2013). If he makes that showing, we may correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations omitted) (alteration in original). Our review leads us to conclude that there was no plain error.

With respect to the alleged Rule 11(b)(1)(G) violation, "there is no one mechanical way . . . that a district court is required to inform the defendant of the nature of [his] charges[.]" *United States v. Wiggins*, 131 F.3d 1440, 1443 (11th Cir. 1997). "[E]ach colloquy [should be] done individually based on various factors, such as the simplicity or complexity of the charges and the defendant's sophistication and intelligence[.]" *Id.* For simple charges that are generally familiar to a layman, "a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." *Id.*

The district court asked Mr. Puentes-Hurtado if he understood that Count 1 charged him "with a conspiracy to possess with the intent to distribute cocaine and methamphetamine," and Mr. Puentes-Hurtado responded "[c]orrect." D.E. 410 at 4-5. Although the better approach would have been for the district court to also explain the elements of the narcotics conspiracy charge, we cannot say that the failure to do so affected Mr. Puentes-Hurtado's substantial rights. Under our precedent, that charge was a "simple" one, and the district court did not commit plain error when it failed to provide more explanation. *See United States v. Bell*, 776 F.2d 965, 969 (11th Cir. 1985) (holding that conspiracies to import marijuana and to possess marijuana with intent to distribute were "'simple'" offenses) (citing *United States v. Dayton*, 604 F.2d 931, 942 (5th Cir. 1979) (en banc)). This is not a case like *United States v. Telemaque*, 244 F.3d 1247, 1249 (11th Cir. 2001),

where we set aside a guilty plea on plain error review because the district court merely asked the defendant if he had read the indictment and understood what he had been charged with.

The alleged Rule 11(b)(3) violation is a bit more complicated due to an intra-circuit conflict. Simply stated, our cases dealing with claims of an insufficient factual basis for a guilty plea are inconsistent.

In *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986), cited by the government in its brief, *see* Br. for United States at 26, we refused to entertain such a claim, ruling that it was non-jurisdictional and therefore waived by a knowing and voluntary plea. *Fairchild*, however, did not cite or discuss a number of prior cases in which we not only addressed such claims, but set aside guilty pleas because of insufficient factual bases. *See, e.g., United States v. Boatright*, 588 F.2d 471, 475-76 (5th Cir. 1979); *United States v. Johnson*, 546 F.2d 1225, 1226-27 (5th Cir. 1977); *United States v. Price*, 538 F.2d 722, 723-24 (5th Cir. 1976); *United States v. Vera*, 514 F.2d 102, 103-04 (5th Cir. 1975). To make matters more confusing, our cases after *Fairchild* have continued to diverge. *Compare, e.g., United States v. Johnson*, 89 F.3d 778, 784 (11th Cir. 1996) (citing *Fairchild* and holding that a claim that "there was no factual basis" was barred by the defendant's guilty plea), *with, e.g., United States v. Owen*, 858 F.2d 1514, 1516 (11th Cir. 1988) (rejecting, on the merits, a claim that there was an insufficient

14

factual basis for a guilty plea), and *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000) (same).

Our prior panel precedent rule requires that, where there are two or more inconsistent circuit decisions, we "follow the earliest one." *Hurth v. Mitchem*, 400 F.3d 857, 862 (11th Cir. 2005). We therefore follow *Vera*, *Price*, *Johnson*, and *Boatright*, all of which predated *Fairchild*, and address Mr. Puentes-Hurtado's claim that there was an insufficient factual basis for his plea to the narcotics conspiracy charge.

Normally, "[t]he standard for evaluating [such a claim] is whether the [district] court was presented with evidence from which it could reasonably find that the defendant was guilty." *United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990). But, as explained above, we are reviewing only for plain error.

Keeping in mind that 21 U.S.C. § 846 does not contain an overt act requirement, *see United States v. Shabani*, 513 U.S. 10, 15 (1994), we reject Mr. Puentes-Hurtado's contention that there was plain error with respect to the factual basis for Count 1. First, the government's proffer indicated that the "conspiracy of which [Mr. Puentes-Hurtado] was a part involved a Mexican drug trafficking organization[.]" D.E. 410 at 10. Second, that proffer also described Mr. Puentes-Hurtado's role in the drug trafficking organization: "And the way [Mr. Puentes-Hurtado] fits into the conspiracy is he was responsible for the transportation of the

15

cocaine from Mexico to Atlanta, and then for transporting bulk currency proceeds of the sales of the cocaine and undetermined amounts of meth[amphetamine] back to Mexico using used cars to hide the money that was being transported back to Mexico." *Id.*

We recognize, of course, that Mr. Puentes-Hurtado agreed only to "most" of the government's proffer, and that the district court did not question him further on which portions of the proffer he disagreed with. But Mr. Puentes-Hurtado also told the district court under oath that he was guilty of the charge in Count 1, *see id.* at 13, and he signed a plea agreement in which he "admit[ted] he was pleading guilty because he [was] in fact guilty of the crimes charged in Counts [1 and 3]." D.E. 338 at 1. Even assuming that the record could be read in such a way that Mr. Puentes-Hurtado only admitted to physically transporting the drug proceeds, such transportation was a necessary part of the drug trafficking scheme, and knowing participation in a conspiracy can be shown "through proof of surrounding circumstances, such as acts committed by the defendant that furthered the purpose of the conspiracy." *United States v. Matthews*, 168 F.3d 1234, 1245 (11th Cir. 1999). On this record, we cannot say that any deficiency in the factual basis for Count 1 affected Mr. Puentes-Hurtado's substantial rights.

16

## C

Finally, Mr. Puentes-Hurtado claims that the government breached the plea agreement by relying on statements in his own proffer, which were protected by U.S.S.G. § 1B1.8, to recommend a base offense level of 38 for the narcotics conspiracy charge. He argues that, without these protected statements, there was insufficient evidence to support a finding that he was responsible for 244 kilograms of cocaine. Stated differently, he contends that the government's breach of the plea agreement led the district court to commit procedural error in calculating the advisory guideline range for the narcotics conspiracy charge.

Such a claim is normally subject to plenary review. *See United States v. Symington*, 781 F.3d 1308, 1312 (11th Cir. 2015). But where, as here, the claim was not preserved in the district court, the plain error standard applies. *See Puckett v. United States*, 556 U.S. 129, 136, 141-43 (2009).

Even if we assume that the government breached the plea agreement (and we do not hold that it did), Mr. Puentes-Hurtado cannot show that the breach (and any resulting procedural error by the district court in the calculation of the advisory guideline range) affected his substantial rights. There is nothing in the record to indicate that Mr. Puentes-Hurtado would have received a different sentence had the drug quantity attributable to him been substantially lower. To the contrary, the

record shows that the district court would have imposed the same sentence even if Mr. Puentes-Hurtado was responsible for only five kilograms of cocaine:

> [T]he record should further reflect that this would have been the court's sentence even if the court got it wrong on the issue of five kilos of cocaine versus 244 kilos of cocaine because . . . this is the appropriate sentence either way[.]

D.E. 411 at 19.  As a result, Mr. Puentes-Hurtado—who does not argue that his 180-month sentence was substantively unreasonable—is not entitled to relief on this claim.  *See United States v. Pantle*, 637 F.3d 1172, 1177-78 (11th Cir. 2011) (where the record establishes a reasonable probability that the district court would not have imposed a lower sentence, a defendant who alleges a procedural error cannot demonstrate plain error).

## IV

We affirm Mr. Puentes-Hurtado's convictions and sentence.

**AFFIRMED.**