[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13989
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20914-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDERSON JEAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 1, 2020)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Anderson Jean is a federal prisoner who is serving an 84-month total sentence after pleading guilty to two immigration offenses.  In this direct appeal, he seeks to vacate one of his guilty pleas, arguing that the district court violated Rule 11, Fed R. Crim. P., by failing to ensure that an adequate factual basis supported his plea or that he understood the nature of the charge against him.  After careful review, we affirm.

## I.

In November 2015, Jean was charged with twelve counts of knowingly encouraging and inducing an alien to enter the United States, 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 1-12), and one count of aiding an inadmissible alien who had been convicted of an aggravated felony to enter the United States, 8 U.S.C. § 1327 (Count 13).  Specifically, Count 13 charged that Jean

> Did knowingly aid and assist an alien, CHRISTOVAL REECE, to enter the United States, said alien being inadmissible under Title 8, United States Code, Section 1182(a)(2), as an alien who had been convicted of an aggravated felony.

Jean agreed to plead guilty to Counts 1 and 13 in a written plea agreement.  In exchange, the government agreed to move to drop the remaining counts after sentencing, to recommend a three-level acceptance-of-responsibility reduction be applied in Jean's guidelines calculations, and to recommend that his sentences run concurrently with those imposed in two other, unrelated criminal cases.  The plea agreement contained an appeal waiver, in which Jean agreed to waive his right to

"assert any claim that . . . the admitted conduct does not fall within the scope of the statute of conviction."

In a written factual proffer that accompanied the plea agreement, the parties stipulated that the government could prove the following facts if the case proceeded to trial. In March 2015, the U.S. Coast Guard sent a small law-enforcement vessel to intercept a suspicious vessel that was traveling in international waters toward Miami without navigational lights. The vessel did not stop immediately when the law-enforcement vessel activated its lights and sirens, but eventually it did. By the time it had stopped, Jean, who was the master of the vessel, had stepped away from the helm. Officers found approximately $6,000 in Jean's possession.

Thirteen people, including Jean, were onboard, and none had permission to enter the United States. Jean and four other Haitian nationals were transferred to another Coast Guard boat and taken back to Haiti. The remaining individuals were brought ashore for processing by U.S. Border Patrol, which determined that Reece had previously been removed from the United States and had previously been convicted of an aggravated felony. In interviews, several individuals, including Reece, identified Jean as the operator of the vessel and said they had paid money to a smuggler in the Bahamas to be brought to the United States.

At the plea colloquy, Jean was placed under oath and testified as follows. He dropped out of school in the sixth grade and was able to read and write in English

3

with some difficulty. He had received psychiatric treatment while in prison because he had been shot in the head, which had resulted in some nerve problems. Specifically, he sometimes could not sleep at night because he would hear voices and have bad dreams. He was not taking any medication for his condition, but he was not hearing voices at the hearing.

When asked if he understood what his attorney had explained to him about his case, Jean stated "I understand everything." However, when the court asked if he had any difficulty explaining the facts of his case to his attorney, Jean became confused and explained that he was "kind of slow" and "had special classes in school." The court stated that it wanted to know if he had been able to discuss the facts of his case with his attorney, and Jean said he had. The court asked Jean's attorney if he had any reason to doubt Jean's competence, and Jean's attorney said he did not.

When the court asked Jean if he was fully satisfied with his counsel's representation, Jean responded, "Yes, Ma'am. I just want to get this over with." Jean further remarked, "I just . . . want to put it behind me because I can't live at peace in here to know that I got cases on me."

The court turned to the plea agreement and began to explain the charges against Jean. The following exchange occurred:

> THE COURT: Listen, Mr. Jean, you know that in this case, the case from 2015, you're charged with having encouraged and induced several

4

aliens to come into the United States, including at least one inadmissible alien.

Do you know that?

THE DEFENDANT:  I understand the case, but I do not know those people.

THE COURT: Well, I don't care whether you know them or not.  Do you understand those are the charges against you?

THE DEFENDANT:  Yes, ma'am.

The court turned to the factual proffer, and Jean confirmed that he signed it after reviewing it with his attorney.  He confirmed that he agreed with every fact in the proffer.  Jean pled guilty to Counts 1 and 13.  The district court found that Jean was aware of the nature of the charges, that his pleas were knowing and voluntary, and that his pleas were supported by an independent basis in fact containing each of the essential elements of the offenses.  It accepted his pleas and adjudged him guilty. Jean did not object.

The district court sentenced Jean to 60 months' imprisonment as to Count 1 and 84 months' imprisonment as to Count 13, to run concurrently.  It imposed his 84-month total sentence to run concurrently with the sentences for his two unrelated convictions.  Upon the government's motion, it dismissed Counts 2 through 12 of the indictment.  Jean now appeals.

**II.**

5

Jean contends that the district court violated Rule 11(b)(3), Fed. R. Crim. P., by failing to ensure that his plea of guilty to Count 13 was supported by a sufficient factual basis.  He further contends that, because the record contains no evidence as to an essential element of the offense, his guilty plea could not have been knowing and voluntary, in violation of Rule 11(b)(1)(G).

Because he did not object to the plea colloquy below, we review for plain error.[1]  *See United States v. Rodriguez*, 751 F.3d 1244, 1251 (11th Cir. 2014) ("We review for plain error when a defendant . . . fails to object in the district court to a claimed Rule 11 violation, including a claim that there was an insufficient factual basis for a guilty plea.").  Under plain-error review, Jean bears the burden of showing (1) an error (2) that is plain and (3) that affects substantial rights.  *Id.*  To meet the third prong, the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea."  *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).  We may "consult the whole record when considering the effect of any error on substantial rights."  *United States v. Vonn*, 535 U.S. 55, 59 (2002).

**A.**

---

[1] The government contends that Jean has waived his factual-sufficiency claim through the appeal waiver in his plea agreement.  However, we have held that an appeal waiver does not bar a Rule 11 claim of an insufficient factual basis to support a guilty plea.  *See United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015).  We also reject the government's contention that Jean waived this claim by pleading guilty.  *See id.* at 1286-87.

6

First, the factual basis:  Ordinarily, "[t]he standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." *United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005) (quotation marks omitted).  The purpose of the factual-basis requirement is "to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading." *Id.* (quotation marks omitted).

**i.**

Before we turn to Jean's claim that his guilty plea lacked a sufficient factual basis, we must resolve the parties' dispute as to what the government needed to prove to convict Jean of violating § 1327.

Section 1327 makes it a crime to "knowingly aid[] or assist[] any alien inadmissible under section 1182(a)(2) (insofar as an alien inadmissible under such section has been convicted of an aggravated felony) . . . of this title to enter the United States."  8 U.S.C. § 1327.  We have held that, to convict a defendant of violating § 1327, the government must prove beyond a reasonable doubt that (1) the defendant knowingly aided or assisted an alien to enter the United States; (2) the defendant knew that the alien was inadmissible; and (3) the alien was inadmissible under 8 U.S.C. § 1182(a)(2) for having been convicted of an aggravated felony. *United States v. Lopez*, 590 F.3d 1238, 1254 (11th Cir. 2009).  The government may

satisfy the second element by proving that the defendant knew the alien was inadmissible for any reason—it does not have to prove that the defendant knew the alien was inadmissible due to a prior aggravated felony conviction. *Id.* at 1254-55. In *Lopez*, we held that it was sufficient that the defendant knew his passengers were seeking to enter the United States without valid entry documents, which made them inadmissible under 8 U.S.C. 1182(a)(7). *See id.*

Jean concedes that *Lopez* is controlling as to the elements of § 1327 but argues that it was wrongly decided and is no longer good law in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *McFadden v. United States*, 576 U.S. 186 (2015). In *Rehaif*, the Supreme Court interpreted 18 U.S.C. § 924(a)(2), which imposes criminal penalties on "whoever knowingly violates" 18 U.S.C. § 922(g), and held that the word "knowingly" applied to every material element of § 922(g). *Rehaif*, 139 S. Ct. at 2200. In *McFadden*, the Supreme Court held that 21 U.S.C. § 841(a)(1), which makes it unlawful "for any person knowingly or intentionally to manufacture, distribute, or dispense . . . a controlled substance," required the government to prove that the defendant knew he was dealing with a controlled substance. *McFadden*, 576 U.S. at 188-89. Jean argues that, because the word "knowingly" in § 1327 introduces the elements of the crime, it applies to all three of those elements, and the government should be required to prove that he knew that

Reece was inadmissible because he had committed an aggravated felony. *See Rehaif*, 139 S. Ct. at 2196.

But under our prior-panel precedent rule, we are bound by *Lopez* until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc. *United States v. Gillis*, 938 F.3d 1181, 1197 (11th Cir. 2019). To overrule or abrogate a prior panel's decision, the subsequent Supreme Court or en banc decision "must be clearly on point and must actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* (quotation marks omitted). *Rehaif* and *McFadden* do not meet that mark. Neither case is clearly on point, as the statutes they interpret come from different parts of the criminal code and differ in structure from § 1327. *See* 18 U.S.C. §§ 922(g); 924(a)(2); 21 U.S.C. § 841(a)(1). Further, nether case mentions *Lopez* or § 1327, meaning they do not actually abrogate or directly conflict with our holding. Accordingly, we remain bound by our prior precedent.

Next, Jean argues that, regardless of our holding in *Lopez*, the government was required to prove that he knew Reece was inadmissible as an aggravated felon because his indictment alleged such knowledge in Count 13. But the indictment tracked the language of the statute, which requires only that the government prove that Jean knew Reece was inadmissible. *See Lopez*, 590 F.3d at 1254-55.

Accordingly, before accepting Jean's guilty plea, the district court was required to ensure that a sufficient factual basis supported these essential elements: (1) Jean knowingly aided or assisted Reece to enter the United States; (2) Jean knew that Reece was inadmissible; and (3) Reece was inadmissible under 8 U.S.C. § 1182(a)(2) for having been convicted of an aggravated felony. *Id.*; Fed. R. Crim. P. 11(b)(3). Jean argues that the court plainly erred by failing to do so. We address this argument now.

## ii.

The government concedes that the record contained no direct evidence to support the second element of § 1327—that Jean knew Reece was inadmissible. At the plea colloquy, Jean told the district court that he did not know any of the people he was transporting, and the district court did not follow up to ask if he knew of their inadmissible status. In addition, the factual proffer stated that the individuals interviewed by Border Patrol said that they paid a smuggler, not Jean himself, to be taken to the United States. This distinguishes Jean's case from *Lopez*, in which it was "undisputed that Lopez knew . . . that his passengers were undocumented aliens seeking entry to the United States." *Lopez*, 590 F.3d at 1255.

Jean argues that, because his knowledge that Reece was inadmissible was an essential element of the offense, it must have been expressly established in the plea

10

agreement, factual proffer, or plea colloquy, not silently inferred by the district court based on circumstantial evidence.

But our review of the district court's determination that a plea is supported by sufficient facts is deferential, even when we are not reviewing for plain error. *See Frye*, 402 F.3d at 1129 (evaluating the appellant's Rule 11(b)(3) challenge for an abuse of discretion). And under plain-error review, we have upheld a defendant's guilty plea based on circumstantial evidence. In *Puentes Hurtado*, the defendant stated that he agreed to "most" of the government's factual proffer, including that he had transported money to El Paso, Texas, but the district court did not question him further as to which parts he disagreed with before accepting his guilty plea on a drug-trafficking conspiracy charge. *Puentes Hurtado*, 794 F.3d at 1282-83, 1286. We held that, even if he admitted only to transporting drug proceeds, that action furthered the purpose of the conspiracy and, therefore, provided circumstantial evidence of his knowing participation in the conspiracy. *Id.* at 1287.

Here, Jean admitted in the factual proffer that he was the master of a vessel transporting twelve individuals, including Reece, who had paid a smuggler for passage to the United States. When the Coast Guard attempted to stop his vessel, he did not immediately stop. Jean had $6,000 on his person, and none of the twelve individuals, nor Jean, was admissible to the United States. Although the evidence is circumstantial, the district court could reasonably find, based on the proffer, that

11

Jean knew Reece was inadmissible. *See Frye*, 402 F.3d at 1128; *Lopez*, 590 F.3d at 1254-55. Accordingly, it did not plainly err in finding that a sufficient factual basis supported his guilty plea to Count 13.

**B.**

Next, Jean argues that his plea to Count 13 was not knowing and voluntary because the district court did not explain the essential elements of § 1327 at the plea colloquy, and he did not otherwise understand them.

Rule 11 mandates that courts inform the defendant of, and determine that he understand, "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). There is no specific way that a district court is required to inform the defendant of the nature of the charges. *Puentes-Hurtado*, 794 F.3d at 1286. The adequacy of the colloquy depends on various factors, including the complexity of the charges and the defendant's intelligence and sophistication. *Id.*

Here, Jean cannot show that any error the district court may have made in failing to explain the elements of his § 1327 charge affected his substantial rights. *See Dominguez Benitez*, 542 U.S. at 83. He argues that, had he understood the knowledge requirement correctly, he would not have pled guilty to Count 13 and

would have been subject to only the 60-month statutory maximum in Count 1, making his prison term at least two years lighter. But as we concluded above, the record reasonably supports a finding that Jean knew Reece was inadmissible. And Jean did receive significant benefits by pleading guilty: the government moved to drop eleven of the thirteen counts against him, recommended a three-level acceptance-of-responsibility reduction in his guideline calculation, and recommended that his sentences in this case and his two other, unrelated cases all run concurrently. Plus, Johnson received the benefit of having his sentence in this case run concurrently with his sentences in two separate cases against him for illegal reentry after deportation and for being a felon in possession of a firearm. The record also contains no indication that the government would have been willing to allow Jean to plead guilty to only Count 1. In addition, at the plea colloquy, Jean stated numerous times that he "just want[ed] to get this over with." Jean has not met his burden to show that he would not have pled guilty if the district court had more fully explained the essential elements of § 1327. *See Dominguez Benitez*, 542 U.S. at 83.

## III.

For the reasons stated, we reject Jean's request to vacate his guilty plea as to Count 13, and we affirm his convictions and sentences.

**AFFIRMED.**