[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-14183

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERT LOUIS PERKINS,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cr-00032-CDL-MSH-2

————————————————

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Robert Perkins pleaded guilty to one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). On appeal, Perkins argues that the district court abused its discretion when it denied his motion to withdraw his guilty plea based on the alleged ineffective assistance of Perkins's counsel and plainly erred in failing to conduct an evidentiary hearing on his claim prior to denying the motion to withdraw his plea.[1] After review, we affirm.

## I.    Background

In 2021, a grand jury indicted Perkins, his wife Taylor, and a third individual, Constantine Varazo, on one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and 18 U.S.C. § 2 (Count

---

[1] To the extent that Perkins raises a separate substantive ineffective-assistance-of-counsel claim, in the interest of avoiding piecemeal litigation and because ineffective-assistance claims are better suited for a timely 28 U.S.C. § 2255 motion upon which a record can be established specifically on the issue of ineffective assistance, we decline to address this claim at this time. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (explaining that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance"); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) ("We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."). Perkins is free to assert this claim in a subsequent § 2255 motion.

One), and one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count Two).[2]  Perkins pleaded guilty to Count Two, and in exchange the government agreed to dismiss Count One.

Briefly, the parties stipulated to the following facts.  In the late night hours of March 15, 2020, a local sheriff's deputy attempted a traffic stop of a vehicle for failing to dim its high beam headlights when approaching other vehicles.  A high speed chase ensued, and the occupants of the vehicle were observed throwing things out of the vehicle's windows during the chase.  The vehicle was eventually stopped following a PIT maneuver.[3]  Officers identified Perkins as the driver, his wife as the front seat passenger, and Varazo as the backseat passenger.  Officers then seized the items that were thrown out the car window during the chase, which included multiple bags of suspected ecstasy; a bag of suspected marijuana; some needles; and a bookbag containing a handgun, several smaller bags of methamphetamine, heroin, a set

---

[2] Varazo was also charged with a separate firearms count that is not relevant to this appeal.

[3] PIT stands for "precision immobilization technique."  This technique "involves easing up to and making contact with a fleeing suspect's car in such a way as to cause the target car to snap sideways and come to a halt."  *Ga. Ass'n of Chiefs of Police, Law Enforcement Pursuits in Georgia: Review and Recommendations* (Rev. Aug. 8, 2006) (quoting National Institute of Justice, *High-Speed Pursuit: New Technologies Around the Corner*, U.S. Dep't of Justice (Oct. 1996) at 4–5).

of scales, and Varazo's cell phone.[4]  Upon booking, Perkins's wife, Taylor, provided a voluntary statement to police, in which she indicated that they had driven from Pensacola to Cordele, Georgia to purchase drugs.  Varazo had offered to pay the Perkinses to drive him.  At the time of the stop, they had completed the transaction and were driving home, and Varazo began throwing drugs out the window when the police attempted to stop the vehicle.  She confirmed that she knew that Varazo had "some 'ice,' heroin, and 'meth.'"  Perkins, himself, was unaware of the amount of drugs they purchased.

The plea agreement provided that, at sentencing, the district court would "determine any pertinent fact by a preponderance of the evidence" and could "consider any reliable information, including hearsay."  The plea agreement detailed that Perkins faced a statutory maximum sentence of 20 years' imprisonment, and that the district court was "not bound by any estimate of the probable sentencing range that [Perkins] may have received from [his] attorney, the Government, or the Probation Office."  Furthermore, the agreement provided that Perkins

> [would] not be allowed to withdraw [his] plea because
> [he] ha[d] received an estimated guideline range from
> the Government, [his] attorney, or the Probation
> Office which is different from the guideline range

---

[4] Testing results confirmed that the bag contained 190.47 grams of pure methamphetamine, 27 grams of pure heroin, and another 4.5 grams of pure methamphetamine.

computed . . . in the Presentence Investigation Report ["PSI"] and found by the [c]ourt to be the correct guideline range.[5]

Additionally, the agreement provided that Perkins would have the opportunity to review and object to the information contained in the PSI, but that Perkins also understood and had discussed with his counsel that any objections or challenges to the PSI or the court's rulings on said objections would not be grounds for withdrawing the plea.[6]

Perkins initialed each page of the agreement and signed the agreement under the paragraph declaring that he read and understood the provisions of the agreement. Perkins's counsel, Jennifer Curry, also signed the agreement, attesting that she had read and explained the agreement to Perkins, and that she believed that he understood its terms.

At the change of plea hearing, Perkins, age 38, confirmed that he was a high school graduate and could read and write. He confirmed that he understood what he was charged with in Count 2, and that he faced a statutory maximum of 20 years'

---

[5] Moreover, the agreement confirmed that the district court had the authority to impose a more severe or less severe sentence than that provided for by the guideline range.

[6] The agreement also contained a sentence-appeal waiver, which provided that Perkins waived his right to appeal his sentence with the exception that he could appeal if the sentence exceeded the advisory guideline range as calculated by the district court or exceeded the statutory maximum. Perkins also preserved his "right to bring a claim for ineffective assistance of counsel."

imprisonment. The district court explained that the guidelines were advisory and that it could impose a sentence above or below that called for by the guidelines. Perkins stated that he understood and that he had discussed the application of the guidelines with his counsel and understood how the guidelines applied. The district court also cautioned that Perkins's ultimate sentence might be different from any estimate provided to Perkins by his attorney or other sources, and Perkins confirmed that he understood.

Next, Perkins confirmed that it was his initials and signature that appeared on the plea agreement and that he read the entire agreement, discussed it with his attorney, and that he understood it. The district court explained that it was not bound by any sentencing recommendations in the plea agreement, and that even if it did not follow such recommendation, that would not be a basis for Perkins to withdraw his plea. Perkins stated that he understood. Perkins stated that he was satisfied with his counsel's advice and representation. Finally, Perkins averred that no one had promised him anything that was not written down in the plea agreement, and his counsel agreed with that representation. When asked how he was pleading to Count Two, Perkins stated he was guilty, that he was entering the plea freely and voluntarily, and that no one had promised him anything to induce a plea or threatened or coerced him into pleading guilty. Perkins asserted that he was in fact guilty of the offense. The government then set forth the factual basis for the plea, including that the substances found in the bookbag tested positive for 190.47 grams of pure methamphetamine, 27 grams of heroin, and another 4.5 grams of

pure methamphetamine.  Perkins agreed that the government's statement of facts was true.  Accordingly, the district court accepted his plea of guilty.

Prior to sentencing, the United States Probation Office prepared a PSI.  The probation officer held Perkins accountable for the amount of methamphetamine and heroin recovered in the bookbag—194.97 grams of methamphetamine and 27 grams of heroin.  The total converted drug weight equaled 3,926.4 kilograms of which 3,889.4 kilograms was methamphetamine and 27 kilograms was heroin—resulting in a base offense level of 32.  The probation officer added two levels for obstruction of justice because Perkins "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  The probation officer then subtracted three levels for acceptance of responsibility, resulting in an adjusted offense level of 31.  An adjusted offense level of 31 and Perkins's criminal history category of VI resulted in a guidelines range of 188 to 235 months' imprisonment.

As relevant to this appeal, Perkins objected to being held accountable for all of the drugs recovered in the backpack.[7]  He maintained that "he was unaware of the total quantity of illegal narcotics possessed by his codefendant, and he should not be held accountable for the total quantity of narcotics found inside the vehicle with his codefendant."  The probation officer maintained

---

[7] Perkins raised another objection to the calculation of his criminal history score that is not relevant to the issue on appeal.

that Perkins was accountable for the total drug quantity as relevant conduct, pursuant to U.S.S.G. § 1B1.3(a)(1)(B)(i).[8] Additionally, the probation officer noted that he relied on the amounts stipulated to as part of the plea agreement.

At sentencing, Perkins reiterated his objection to the drug quantity attributed to him, and his counsel maintained that "the spirit of the [plea] agreement and the intent of it was to limit Mr. Perkins'[s] exposure for purposes of sentencing, to limit the amount of drugs he was accepting responsibility, for being held accountable for."  In other words, it was Perkins's position that he was accepting responsibility via the plea agreement only for the heroin charged in Count Two, not the methamphetamine charged in Count One.  Counsel also reiterated that Perkins was simply

---

[8] This guideline provides that when, as here, there is "jointly undertaken criminal activity" the base offense level under the guidelines "shall be determined on the basis of":

> (B) . . . all acts and omissions of others that were—
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii)  in furtherance of that criminal activity, and
> >
> > (iii)     reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B).

hired as a driver, and he was unaware of the amount of drugs that Varazo purchased. Nevertheless, upon questioning from the district court as to the terms of the plea agreement, counsel conceded that nothing in the plea agreement limited Perkins's responsibility to the 27 grams of heroin, and that the factual stipulation included the methamphetamine.

In response, the government argued that the heroin and methamphetamine were discovered in the same bookbag and, under U.S.S.G. § 1B1.3, the methamphetamine qualified as relevant conduct. The government asserted that Perkins was accountable for all of the drugs in the bookbag, even if he did not know the actual amount purchased, because he admitted that he knew they were traveling to buy drugs, and he told law enforcement that they had planned to resell the drugs once they got home. The government maintained that there was never any suggestion in the plea negotiations that the government would hold Perkins accountable for only the heroin, which is one reason why the government included the methamphetamine in the plea agreement.

The district court overruled Perkins's objection, concluding that the methamphetamine qualified as relevant conduct under the guidelines. Thereafter, Perkins stated that he wished to "withdraw [his] plea for insufficient counseling because [he] was misle[]d." He asserted that he "was promised something different." The following colloquy occurred:

THE COURT:        Well, what do you mean you "were promised something different"?

[PERKINS]: I was promised something that—when they dismissed Count 1 and I was asked—I was asked specifically if they dismissed Count 1, that I was promised that I wouldn't be held accountable for it.

THE COURT: So you were under the impression that you would only be held accountable for the 27 grams of heroin?

[PERKINS]:  Yes, sir.

THE COURT: And it's your contention that that's what you were told by your attorney?

[PERKNS]: Yes, sir.

THE COURT: So you wish to withdraw your plea agreement unless the Court sentences you based on you being accountable for just 27 grams of heroin; is that correct?

[PERKINS]:  Yes, sir.

THE COURT: And do we know what the difference in his guideline range would be if he were only held accountable for the 27 grams?

PROBATION OFFICER:  I believe if he's only held [accountable] for the 27 grams, it would be a range of 41 to 51 months, I believe.

THE COURT: So it's a substantial difference, obviously.   Well, I guess my concern . . . is whether he has an adequate opportunity today to present all

the evidence he wants to present on the withdrawal of his guilty plea and we can go ahead and address that today, or whether he needs to be given an additional opportunity to develop and present whatever evidence he wants to present.

Let me ask you this, Mr. Perkins: In support of your motion or request to withdraw your guilty plea, do I understand you to say that the only basis for that is you believe you were provided with ineffective assistance of counsel because you state that your counsel told you that when the plea agreement dismissed Count 1, that you would not be held accountable at sentencing for any of the drugs except for the heroin that's referenced in Count 2?

[PERKINS]: Yes, sir. I was not told—I was not presented with the relevant conduct.

The government argued that Perkins's plea agreement barred his withdrawal attempt, as it explicitly provided that Perkins would not be allowed to withdraw his plea if the guidelines range as calculated by the district court differed from any estimate he may have received from counsel.  Nevertheless, the government conceded that a claim that one's lawyer had told him something different from the plea agreement he had signed could support a motion to withdraw one's plea.

Perkins's attorney then stated the following on the record. She does "not use the word 'promise,'" and she did not "promise anything" to Perkins.  Indeed, it was her practice to "make it very clear to every client that [she] cannot guarantee anything in any

12                    Opinion of the Court                    22-14183

case, federal or at the state level. So no promises were ever made from me or by me." However, she explained that:

> the spirit of th[e] plea agreement was, rather than pleading to the meth count [Count One] which carrie[d] a heavier sentence because the amount is more, we pled to the heroin count because the amount of drugs was in fact less than, for the guideline range purposes. When it came to relevant conduct, we did not include the firearm that was found and was held—that was applied to [Varazo]. That was also in that same bag, and it could have been applied to Mr. Perkins just as the total weight of all the drugs.
>
> That was the spirit of the agreement. That was the spirit of the plea discussions. So the discussions I had with Mr. Perkins did include that, that we are pleading to the heroin count because the drug amount, the weight, is less; and, therefore, his exposure on that particular count would be significantly less than if he pled to the first count with the higher drug amount.[9]    So that was the discussion. . . .

Counsel confirmed that she understood the relevant conduct guidelines. She denied ever telling Perkins that the court would

---

[9] The government explained that Count One carried a mandatory minimum of 10 years' imprisonment and a statutory maximum of life. Whereas, Count Two carried no mandatory minimum and a statutory maximum of only 20 years' imprisonment.

only consider the heroin or that his sentencing exposure was limited to being held accountable only for the heroin.  Rather, she told Perkins only that she would try to argue for that, and that she never made any guarantees.

Accordingly, having heard from counsel, the district court concluded that "the record [was] fully developed as to what happened," and it determined that Perkins simply "had a misunderstanding of what his attorney told him."  The court also noted that the plea agreement expressly provided "that there were no guarantees" and that "he couldn't rely upon a recommendation as to the guideline range from his attorney."  The district court then denied Perkins's motion to withdraw his plea, concluding that Perkins had not satisfied the relevant factors and that there was no fair and just reason to permit withdrawal of the plea.[10]  The district court then gave Perkins an opportunity to speak before imposing sentence, stating that Perkins could "say anything [he] wish[ed]," and informing Perkins that it would consider his prior statement about the weight of the drugs to constitute a request for a downward variance so that he would receive a sentence as though he had been held only for the 27 grams of heroin.  Perkins stated that he did not have anything else he wished to say.

---

[10] The district court further explained that to the extent that Perkins maintained his counsel rendered ineffective assistance in relation to the plea, it was not ruling on his ineffective assistance allegation, and Perkins was free to assert that claim in a collateral proceeding.

After hearing additional argument from the parties as to the appropriate sentence, the district court denied Perkins's request for a downward variance, and imposed a within-guidelines sentence of 192 months' imprisonment to be followed by 3 years' supervised release. Neither party made any additional objections. This appeal followed.

## II.    Discussion

Perkins argues that the district court erred in denying his motion to withdraw his guilty plea, and he asserts for the first time that the district court should have conducted an evidentiary hearing on his motion. He maintains that his plea was not knowingly and voluntarily entered because his counsel rendered constitutionally ineffective assistance by assuring him that the offense level would be based on only the heroin and would not include the methamphetamine.[11]

"[T]here is no absolute right to withdraw a guilty plea prior to imposition of a sentence," and "[t]he decision to allow withdrawal is left to the sound discretion of the trial court." *United*

---

[11] Perkins also asserts in passing, for the first time on appeal, that the sentence-appeal waiver in the plea agreement was not knowing and voluntary because of the same alleged ineffective assistance of counsel. Because the appeal waiver does not serve to bar Perkins's challenge to the validity of the plea agreement and the government is not otherwise seeking to enforce the appeal waiver, we decline to address this issue. *See United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (explaining that an appeal waiver does not bar challenges to the validity and voluntary nature of the plea agreement itself).

*States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). "We review the denial of a request to withdraw a guilty plea for abuse of discretion. There is no abuse of discretion unless the denial is arbitrary or unreasonable." *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (quotation and internal citation omitted).

A defendant may withdraw an accepted guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether the defendant has met his burden of demonstrating a fair and just reason for withdrawal of the plea, a "district court may consider the totality of the circumstances surrounding the plea," including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Buckles*, 843 F.2d at 471–72 (internal citation omitted). "The good faith, credibility and weight of a defendant's assertions in support of [the] motion . . . are issues for the trial court to decide." *Id.* at 472. Furthermore, there is a "strong presumption" that statements made by a defendant during his plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Here, the district court did not abuse its discretion in denying Perkins's motion to withdraw his guilty plea based on

Perkins's allegations that his counsel had promised him that his sentence would be based only on the heroin and not the methamphetamine. Prior to ruling on the motion, the court considered Perkins's statements as to what his counsel told him and obtained statements from the counsel as to whether she made the alleged promises, which she denied. Additionally, Perkins's plea agreement expressly provided that the guidelines calculation or the sentence he received could differ from any estimates he might have received from his counsel, and that any disagreement on that point would not be a ground for withdrawing his guilty plea. Perkins initialed those pages and signed the agreement, including the provision stating that he had read the agreement and understood its terms. Moreover, the district court reviewed these provisions with Perkins at the change-of-plea hearing, and Perkins confirmed that he understood. We presume the truth of Perkins's statements.[12] *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168; *Buckles*, 843 F.2d at 471–72. In short, under the totality of the circumstances, the district court's denial of Perkins's motion to withdraw his guilty plea was not arbitrary or unreasonable. *See Brehm*, 442 F.3d at 1298. And we cannot say it was outside the range of permissible choices such that the district court abused its discretion in denying withdrawal.

---

[12] Perkins's purported mistaken belief that he would receive a sentence based solely on the heroin per his counsel's advice simply was not reasonable in light of the plea agreement and the district court's discussion during the plea colloquy that the ultimate guidelines range or sentence could be different from any estimate Perkins may have received from his counsel.

Relatedly, Perkins cannot show that the district court plainly erred in failing to conduct an evidentiary hearing on his motion to withdraw the guilty plea. As an initial matter, Perkins never requested an evidentiary hearing in the district court, and he did not object to the denial of his motion without one being held. Accordingly, because he raises the issue of an evidentiary hearing for the first time on appeal, we review only for plain error. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). In order to succeed under plain-error review, Perkins must show that (1) there was an error; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* An appellant's substantial rights are prejudiced when the error affected the outcome of the district court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993). The burden is on the defendant to show that the error affected the district court outcome. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005). If the effect of the error is uncertain, the defendant is not entitled to relief. *Id.* at 1300. Perkins has not cited a single decision, from this Court or elsewhere, holding that a district court errs by failing to hold an evidentiary hearing on a defendant's motion to withdraw his guilty plea where the defendant himself has not requested one. Not only that, but binding precedent suggests that, even where a defendant requests an evidentiary hearing on his motion to withdraw, a district court does not abuse its discretion in denying that request, when, as here, it "conducted extensive Rule 11 inquiries prior to accepting the guilty plea." *Brehm*, 442 F.3d at 1298; *see also United*

*States v. Stitzer*, 785 F.2d 1506, 1514 (11th Cir. 1986) (holding that "[i]n light of the extensive Rule 11 inquiries which the trial court made before accepting appellant's plea," the district court did not abuse its discretion in refusing to conduct an evidentiary hearing on the motion to withdraw).  Under these circumstances, the district court's failure to hold an evidentiary hearing before denying Perkins's motion to withdraw was not error, much less plain error.  *See United States v. Lejarde–Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) ("[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [the issue].").

Moreover, Perkins does not assert what information he was prevented from presenting by the court's failure to conduct an evidentiary hearing, and he concedes that "it is impossible to know whether [the district court's] decision would have been the same had it granted [him] an evidentiary hearing."  Because the effect on Perkins's substantial rights is at best uncertain, he is not entitled to relief.  *See Rodriguez*, 398 F.3d at 1300.  Accordingly, we affirm.

**AFFIRMED.**