[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14440
Non-Argument Calendar

_____

D.C. Docket No. 7:18-cr-00007-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH VERNON HUTTO,
a.k.a. KENNY
a.k.a. CURLY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(April 22, 2021)

Before JILL PRYOR, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Kenneth Vernon Hutto appeals after he pled guilty to two counts of transportation for prostitution, in violation of 18 U.S.C. § 2421(a). He argues that the government breached his plea agreement by failing to recommend that he should receive an acceptance-of-responsibility reduction and that the District Court clearly erred in imposing a two-level aggravating role enhancement and a two-level obstruction of justice enhancement under the Sentencing Guidelines. Because we conclude that the government did breach the plea agreement but did not cure that breach—and thus remand this case for resentencing—we do not address Hutto's challenges to the sentence enhancements.

I.

From March 2017 to February 2018, Hutto transported a woman, E.B., between Georgia and South Carolina for the purposes of prostitution with the intent to profit from her sexual acts. Hutto's ex-wife—Shannon Richardson—and E.B. were friends, and as a result of their friendship, E.B. became acquainted with Hutto. In March 2017, after he was released from federal prison, Hutto went to "rescue" E.B. from an abusive and controlling partner. Both Hutto and E.B. later indicated that the partner's abuse led E.B. to become depressed.

After Hutto extracted E.B. from her abusive living situation, he explained to E.B. that his ex-wife (Richardson) made a living by engaging in prostitution. By April 2017, Hutto had wrangled E.B. into prostitution after suggesting that they

travel to various locations so that E.B. could engage in commercial sex acts. Since Hutto was unemployed, he planned to assist in the logistics of the prostitution operation, including handling the profits. Hutto eventually posted ads on different websites advertising E.B.'s services for sex.

On June 13, 2017, undercover authorities from the Lowndes County Sheriff's Office and an FBI Task Force responded to an online advertisement displaying E.B. with visible bruising on her body. The authorities communicated with E.B.—or someone pretending to be E.B.—via text message and were directed to meet her at a Super 8 Motel located off Interstate 75 in Valdosta, Georgia. When the undercover officers arrived, one met with Hutto outside the motel, and Hutto told him to go to room 141. Inside the room, the officer found E.B. with bruising on her eyes, neck, and arms. E.B. and the officer agreed on a price of $125 for a half hour of sex; the officer provided E.B. with $200 and indicated that he needed change. E.B. did not have change, so she contacted Hutto by phone for instructions on how to proceed. The officers detained E.B. at that time, and Hutto was detained outside the motel room.

Authorities then questioned Hutto and asked why E.B. was at the Super 8. Hutto attempted to dodge the question and explained that E.B. was "having company and accepting donations." He also stated that he struck E.B. but did so for her own protection; Hutto elaborated that several "black pimps" were

3

attempting to "haul [E.B.'s] ass away." Hutto was able to provide authorities with pricing for visits with E.B., and he admitted that he had been conducting this type of business for three to four months. Authorities reviewing text messages on Hutto's phone later found that Hutto communicated with potential procurers of E.B.'s commercial sex acts as though he were E.B., and Hutto admitted that he controlled the money resulting from the prostitution scheme.

In her conversation with the authorities, E.B. stated that she suffered from schizophrenia, post-traumatic stress disorder, and bi-polar disorder and that Hutto was aware of these mental health issues. E.B. told the officers that she wanted to stop performing sexual acts, but when she mentioned it to Hutto, he became angry and told her that they would not have money or a place to sleep. Eventually, E.B. admitted that Hutto gave her the bruised eye when he discovered a particular phone number in her phone.

Hutto was placed in pretrial detention in the Lowndes County Jail. While there, Hutto called E.B. and encouraged her to write an affidavit stating that he had done nothing wrong. E.B. obliged, stated in the affidavit that she was not forced to engage in commercial sexual activity, and stated that she did not want Hutto to be hurt.

After Hutto was released on bond under a no contact order with E.B., authorities arrested him again after learning that he was travelling in South

Carolina with E.B. in violation of his bond and was continuing to cause her to engage in commercial sex acts. Yet again, while in pretrial detention, Hutto called E.B. and tried to influence her testimony. Over the phone, he told both E.B. and his wife that E.B. would not be able to testify against him due to the statements that she had made in their telephone conversations.

Hutto was originally indicted on February 14, 2018, but in a superseding indictment filed on December 12, 2018, Hutto was charged with one count of sex trafficking by force, fraud, and coercion; two counts of financially benefitting from sex trafficking by force, fraud, and coercion; and one count of tampering with witness testimony. A superseding information later charged him with two counts of transportation for prostitution, in violation of 18 U.S.C. § 2421(a) ("Count One" and "Count Two"). Hutto pled guilty to Counts One and Two pursuant to a plea agreement.

In the plea agreement, the government promised to accept Hutto's guilty plea in full satisfaction of all possible federal criminal charges known to it at the time of the plea and to dismiss the pending indictment against him. Paragraph (4)(B) of the agreement also stated, in relevant part, that:

> If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Federal Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive an appropriate downward departure for such acceptance. . . . The

5

United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

The agreement additionally contained a waiver of Hutto's right to appeal his sentence unless the sentence exceeded the sentencing guideline range calculated by the court at sentencing or exceeded the statutory maximum sentence.

In preparing the PSI, the probation officer applied a base offense level of 14 under U.S.S.G. § 2G1.1(a)(2) for Count One. Hutto then received a two-level enhancement under § 3B1.1(c) for being the organizer, leader, manager, or supervisor in any criminal activity. He also received a two-level enhancement for obstruction of justice under § 3C1.1 for influencing the victim—E.B.—to make statements to law enforcement that would exonerate him. After applying other enhancements not relevant to this appeal, the probation officer calculated an adjusted offense level of 24 for Count 1.

On Count Two, the probation officer applied a base level offense of 14 under § 2G1.1(a)(2) and applied the same enhancements as in Count One, resulting in an adjusted offense level of 24. The probation officer then made a multiple count adjustment, selected the greater adjusted offense level of 24, and increased that offense level by 2 under § 3D1.4 to arrive at a total offense level of 26. With a

criminal history category of VI, Hutto's guideline range was 120 to 150 months' imprisonment. The statutory maximum for Counts One and Two was 10 years' imprisonment.

Hutto objected to the PSI and argued that it should have applied a reduction for acceptance of responsibility under § 3E1.1. He then objected to receiving a two-level enhancement under § 3B1.1(c) for being the organizer, leader, manager, or supervisor of one or more participants in the criminal activity. He likewise objected to the PSI's suggestion that he "unlawfully influenced E.B., a witness, to provide false statements to law enforcement" and to receiving a two-level adjustment for obstruction of justice under U.S.S.G. § 3C1.1. Finally, Hutto objected to the description of two facts in the PSI, arguing that he never "rescued" or "removed" E.B. from her previous living situation and that he was not aware of E.B.'s formal medical diagnoses until he read the police report.

The government responded that Hutto should not receive an acceptance-of-responsibility reduction because he did not voluntarily terminate or withdraw from his criminal conduct; instead, Hutto continued to encourage E.B. to commit acts of prostitution while in pretrial detention. It argued that Hutto should receive an aggravating role enhancement because he recruited E.B. to participate in his criminal conduct, directed E.B.'s movements, and controlled the money she obtained from the commercial sexual activity. The government also argued that

7

Hutto should receive an obstruction of justice enhancement because his conversations with E.B. demonstrated a continued effort to influence or prevent her from testifying against him, despite a court order prohibiting him from contacting her.

At the sentencing hearing, Hutto made four primary arguments regarding his objections to the PSI. First, he argued that he was entitled to a reduction for acceptance of responsibility based on his *post-plea-agreement* conduct and that the government and the probation officer relied on *pre-plea* conduct to deny him the reduction. As part of this argument, Hutto claimed that the government breached the plea agreement by failing to recommend the reduction even though Hutto had complied with the conditions of the agreement. Second, he argued that he should not receive an obstruction of justice enhancement because he had not encouraged E.B. to give a false statement to law enforcement in his calls with her, but rather he encouraged her to make a truthful statement that she voluntarily engaged in prostitution. Third, Hutto argued that he should not receive an aggravating role adjustment because he only supervised E.B., who could not be considered a participant in the criminal activity based on some commentary to the Guidelines. And fourth, he argued that a 150-month sentence exceeded the statutory maximum on each individual count and that a 120-month sentence accounted for his criminal history and difficult life circumstances.

8

The government attempted to rebut each of Hutto's arguments and specifically claimed that Hutto should not receive a reduction for acceptance of responsibility because he had continued to direct E.B. to engage in prostitution while in pretrial detention and had objected to the description of relevant conduct in the PSI that he had stipulated to in his plea agreement.  The District Court ultimately overruled all of Hutto's objections and sentenced Hutto to a 120-month sentence as to Count One and a 30-month sentence as to Count Two, each to run concurrently for a total term of imprisonment of 120 months.  The Court also sentenced him to 20 years of supervised release.

Hutto timely appealed and now argues (1) that the government breached his plea agreement by failing to recommend that he should receive an acceptance of responsibility reduction and (2) that the District Court clearly erred in imposing a two-level aggravating role enhancement and a two-level obstruction of justice enhancement.  The government concedes that it breached the plea agreement by urging the District Court to withhold a reduction for acceptance of responsibility, but it argues that it cured the breach by offering the Court a different reason for withholding the reduction: Hutto's objections to facts in the PSI.  We are not convinced by the government's argument.  So, because we agree that the government breached the plea agreement and failed to cure that breach—and thus

9

remand this case for resentencing before a different district judge—we do not address Hutto's challenges to the sentence enhancements.

## II.

We review *de novo* whether the government has breached a plea agreement when a defendant preserves his objection in the district court. *United States v. Copeland*, 381 F.3d 1101, 1104 (11th Cir. 2004). When a guilty plea rests "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Id.* at 1105 (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971)). The government is thus bound by any material promise that induces the defendant to plead guilty. *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). Ultimately, we determine whether the government violated the defendant's plea agreement "according to the defendant's reasonable understanding at the time he entered his plea." *Id.*

## III.

For present purposes, this appeal raises two issues, which we will address in turn. First, is Hutto's appeal barred by the appeal waiver contained in his plea agreement? And second, if Hutto's appeal is not barred, did the government breach the plea agreement and then cure that breach?

10

We can dispose of the first issue quickly.  While a sentence appeal waiver is enforceable if it was made knowingly and voluntarily, an enforceable appeal waiver "is not an absolute bar to appellate review."  *United States v. Johnson*, 541 F.3d 1064, 1066, 1068 (11th Cir. 2008); *see also United States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993).  Specifically, an appeal waiver does not foreclose a claim that the government breached the plea agreement at sentencing.  *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1281, 1284 (11th Cir. 2015).  This makes intuitive sense: "traditional contract principles generally apply to plea agreements," *id.*, and a criminal defendant should not be bound to the terms of a plea agreement to which the government has failed to adhere.  So, because Hutto's claim on appeal is that the government breached his plea agreement, the agreement's appeal waiver does not bar appellate review.

With the appeal waiver issue taken care of, we can turn to the government's breach and supposed "cure" of the plea agreement.  But before we dive into the facts before us, a few cases and principles are worth discussing.

In *United States v. Hunter*—a case similar to the one before us—a defendant agreed to plead guilty to four charges in exchange for the government's recommendation at sentencing for a two-level reduction and, if eligible, for the government's motion for a one-level reduction for acceptance of responsibility.  835 F.3d at 1323–25.  But when push came to shove at sentencing, the government

refused to make the recommendation and argued *against* the reduction, contending

on appeal that it was excused from making the recommendation because of the

defendant's incredible testimony that occurred prior to the negotiation of the plea

agreement. *Id.* at 1325–26. We held the government's refusal constituted a

significant and deliberate breach of the plea agreement and vacated and remanded

for resentencing before a different district court judge. *Id.* at 1328, 1330. From

*Hunter*, we can distill a simple principle: "the government breaches a plea

agreement when it fails to perform the promises on which the plea was based." *Id.*

at 1324.

So, once an appellant establishes a breach of a plea agreement and preserves

an objection to the breach, our precedent dictates that "'automatic reversal is

warranted.'" *Id.* at 1328–29 (quoting *Puckett v. United States,* 556 U.S. 129, 141,

129 S. Ct. 1423, 1432 (2009)). That said, the Supreme Court has recognized that

"*some* breaches may be curable upon timely objection—for example, where the

prosecution simply forgot its commitment and is willing to adhere to the

agreement." *Puckett*, 556 U.S. at 140, 129 S. Ct. at 1432 (emphasis in original).

We have permitted the government to cure its breach of a plea agreement when it

promptly withdraws the breaching action and then acts consistently with the plea

agreement. *See Raulerson v. United States*, 901 F.2d 1009, 1013 (11th Cir. 1990)

(holding that the government's release of a house would cure its breach of a plea

12

agreement); *In re Arnett*, 804 F.2d 1200, 1204 (11th Cir. 1986) (allowing the government to cure the breach of a plea bargain by withdrawing a forfeiture action).  But if the government has breached the agreement and has failed to cure, we may, in our discretion, remedy the breach by either allowing the defendant to withdraw his guilty plea[1] or by remanding for resentencing before a different judge.  *Hunter*, 835 F.3d at 1329; *see also Santobello*, 404 U.S. at 263, 92. S. Ct. at 499.

After an independent review of the record before us,[2] we agree with the government that it breached Hutto's plea agreement by arguing that he should not receive a reduction for acceptance of responsibility based on his pre-plea conduct. But we disagree that the government cured its breach.  In essence, the government's position is that it "cured" its breach of the plea agreement by offering a different ground on which the District Court could withhold Hutto's acceptance-of-responsibility reduction.  This is not a "cure," but rather an alternative way to breach the plea agreement.  And, in any event, the government never withdrew its initial argument that Hutto's pre-plea conduct merited denial of

---

[1] Withdrawal of the guilty plea is generally less favored.  *United States v. Hunter*, 835 F.3d 1320, 1329 (11th Cir. 2016).

[2] *See United States v. Linville*, 228 F.3d 1330, 1331 n.2 (11th Cir. 2000) (stating that we are not required to accept the government's concession when the law and record do not justify it).

the reduction.[3]  Consistent with this Court's precedent, the government could not cure its breach by simply offering an *additional rationale* to the District Court for denying Hutto a reduction for acceptance of responsibility when it did not retract the initial argument that it made in breach of the agreement.  *See Raulerson*, 901 F.2d at 1013; *Arnett*, 804 F.2d at 1204.

As a result, we hold that the government failed to cure its breach by not withdrawing its breaching argument.  And to remedy the government's breach of the plea agreement, we vacate Hutto's sentence and remand for resentencing before a different district judge.

**VACATED AND REMANDED.**

---

[3] Although Hutto may have breached the plea agreement by objecting to relevant facts in the PSI—which could bar him from enforcing a promise made by the government in the same agreement, *see United States v. Cesal*, 391 F.3d 1172, 1175, 1180 (11th Cir. 2004), *vacated and remanded on other grounds*, 545 U.S. 1101, 125 S. Ct. 2553 (2005), *reinstated*, No. 03-15090, 2004 WL 2663906, manuscript op. at 3 (11th Cir. July 13, 2005)—the government abandoned this issue by not raising it on appeal, *see United States v. Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001).  The government also failed to argue in the District Court that Hutto breached the agreement.  As a result, this Court need not address whether the government was excused from performing under the plea agreement when it acknowledged that it breached the agreement and did not raise any argument about Hutto's possible breach.  *See Puckett v. United States*, 556 U.S. 129, 140 n.2, 129 S. Ct. 1423, 1431 n.2 (2009).